# Bailey v. Selden.

*Bill in Equity to Enforce a Trust under a Will.*

1. *Trust created by will; misjoinder of complainants; right of parties to the trust.*—Where a testator by his will devised and bequeathed cer-

38

tain real and personal property to his widow, for life with remainder to two grand-children, but by the terms of the will the property was charged in the hands of the life tenant with a trust for the maintenance and support of a son-in-law of testator, and also with the education and support of three grand-children of the the testator, it is held, on bill filed by the life tenant, the remaindermen and the three grand-children against the son-in-law, charging that he had set up an adverse claim to the property other than that given in the will, that there was a misjoinder of complainants, and (1) that the remedy of the life tenant at law was adequate; (2) that remaindermen had no rights in the absence of averment of waste or disposition of the property, which would come to them when the life estate should fall in, showing the necessity for its preservation; (3) the grand-children could not complain, it being shown they were supported and educated by the life tenant, although not out of the particular property devised; and (4) that upon the amendment of the bill by striking out all the parties complainant, except the three grand-children, for whose education, &c., the will provided, and asking for relief upon the grounds that the trustee has not taken, and declines to take, any proper steps to execute the trust, and that the complainants have been compelled to provide for themselves since a designated date prior to the filing of the original bill, that complainants are not entitled to relief unless they prove each of the grounds of equity upon which they base such relief; and further that they can not institute proceedings to enforce their equitable rights without first having requested the trustee to act, which he refused to do.

2. *Right of beneficiary under trust to secure its enforcement.*—The beneficiary under a trust has no right to proceed by bill in equity to enforce his equitable rights, without first having moved the trustee to act and having failed to secure such action.

APPEAL from the Chancery Court of Perry.

HEARD before the Hon. WILLIAM H. TAYLOE.

The appeal in this case is taken from a decree of the chancellor dismissing a bill filed by the appellants, Bettie Selden Bailey, who was formerly Bettie Seldon, and others, against the appellee.

The facts of the case are sufficiently stated in the opinion.

R. H. CLARK, A. H. STEWART and SEAY & DEGRAFFEN-REID, for appellants.—1. The following propositions, which are decisive of the appellant's right to maintain the bill, are well settled in this State : (1.) Courts of equity have original jurisdiction to construe wills of decedents, and enforce the trust thereof, first to the payment of debts, and then when these are satisfied to the satisfaction of legacies. (2.) That to the juris-

[Bailey v. Selden.]

diction of the Court a proper party may appeal without any special cause or assigning any special ground for equitable interference, unless the jurisdiction of the probate court attached and is in exercise. (3.) That the legatee, or devisee, are proper parties complainants to such a proceeding and may resort to equity as a matter of right for the settlement of the administration, the payment of legacies, or the making distribution, without assigning any special cause of equitable interference or jurisdiction.—3 Brick. Dig., 334, §§ 61-63 ; *Moore v. Randolph*, 70 Ala. 575 ; *Bragg v. Beers*, 71 Ala. 151 ; *Otis v. Dargin*, 53 Ala. 178 : *Teague v. Corbitt*, 57 Ala. 537 ; *Hooper v. Smith*, 57 Ala. 559 ; *Sellers v. Sellers*, 35 Ala. 235 ; *McNeill v. McNeill*, 36 Ala. 109 ; *McDonald v. McDonald*, 92 Ala. 537 ; *Ward v. Ward*, 95 Ala. 331. And if trusts are to be executed, or discovery is necessary, the powers of the court of probate are inadequate to relief, and equity will take jurisdiction.—1 Brick. Dig., 647.

2. The allegation of the fact that the will gave the appellant and her two brothers certain rights, that nearly five years had elapsed since the probate of the will of Minge, and they had not enjoyed their legacy, of itself, gave the trial court jurisdiction, and having taken it for this special purpose it became the duty of the chancery court to exercise that jurisdiction so as to do complete justice to all the parties.—*Stow v. Bozeman*, 29 Ala. 397 ; *Scruggs v. Driver*, 31 Ala. 274 ; *Millsap v. Stanley*, 50 Ala. 324. The property out of which this legacy was to arise is shown by the bill to be out of possession of the executrix, and in the custody of Selden one of the co-legatees by her permission. The allegations of the bill show that the executrix in so permitting Selden violated the mandates of her testator, and in violating the mandate of her testator she violated the law of the land. *Carroll v. Richardson*, 87 Ala. 609. Next to the law of the land the will of her testator was the law to her.

3. The bill avers that Selden is wasting the personalty on the Fair Hope place and is allowing the plantation to go to waste, and is insolvent. This averment gives the court jurisdiction, and it was the duty of the court to dispose of the whole case.—*Beach on Receivers*, § 3 ; *Randle v. Carter*, 62 Ala. 95.

4. In this case the life tenant of this property charged with the support, maintenance &c., of appellant, Bailey, and her co-complainants in the amended bill, with the right in favor of Selden of a residence thereon during his life, and remainder over to Maria L. Brown and Mary M. Wilkins, the right of possession to them is by the terms of the will postponed until the death of Mary H. Minge. The legal title is in said remaindermen, but their right to possession and enjoyment is postponed as above stated. But these complainants have a remedy by which their support &c. can be ascertained and enforced in no court, except a court of equity. When she placed the property in such condition that she was unable to carry out the will of her testator and thereby deprived these complainants of their rights under the will, and thus enabled Selden to make this unjust claim to the property, then she thereby created a state of facts that enabled the complainants to ask the interposition of a court of equity to take control of this property, and apply its incomes to the uses expressed in the will, and to protect the rights of remaindermen.— *Lyde v. Taylor*, 17 Ala. 270 ; 3 Brick. Dig. 334, §§ 61-63.

PETTUS & PETTUS, *contra.*—1. This suit, as originally commenced, was nothing more nor less than an action of ejectment in the chancery court, for the recovery by Mary H. Minge, executrix, of possession of the "Fair Hope Plantation." The bill averred that Mary H. Minge, as executrix, was the holder of the legal title and had the immediate right of possession. It also averred that the defendant, Joseph Selden, was in adverse possesssion of said plantation and the personal property thereon, claiming it as his own. The sole issue to be determined in that cause was as to the relative strength of the legal titles to the Fair Hope plantation ; upon the determination of that issue depended the result of the original suit. That suit could not be maintained. *Youngblood v. Youngblood*, 54 Ala. 487 ; *Arnett v. Bailey*, 60 Ala. 435 ; *Smith v. Cockrell*, 66 Ala. 84 ; *Peeples v. Burns*, 77 Ala. 293 ; *Brown v. Brown*, 68 Ala. 116 ; *Moses v. St. Paul*, 67 Ala. 171 ; *State v. Bradshaw*, 60 Ala. 239 ; *Shaw v. Lindsey*, 60 Ala. 351 ; *Pettus v. Glover*, 68 Ala. 419 ; *Grigg v. Swindal*, 67 Ala. 189 ; *Abernathy v. Bankhead*, 71 Ala. 192 ; *Dickinson v. Lewis*, 34 Ala. 638 ; *Rus-*

[Bailey v. Selden.]

*sell v. Little*, 28 Ala. 160 ; *Knotts v. Tarver*, 8 Ala. 744; *Hambrick v. Russell*, 86 Ala. 201.

2. This being true, the rights of the present complainants in the amended bill, to maintain this suit, must stand or fall, as to this matter, upon the averment of the amended bill that "said executrix has not taken and is not now taking and declines to take any proper steps to execute the trust as to said land and personal property created by said will for the benefit of these complainants." The executrix is the trustee ; the complainants are *cestuis qui trust*. They cannot maintain any suit in reference to the subject matter of this litigation without showing that the trustee declines to act. The title is in the trustee, and if there be any action to be taken, the duty is imposed upon the trustee, by law, to take such action.—*Arnett v. Bailey*, 60 Ala. 435 ; *Bridges v. Phillips*, 25 Ala. 136 ; *Duncan v. Simmons*, 2 Stew. & Port. 356 ; *Robinson v. Maudlin*, 11 Ala. 977.

3. It is clear from the record and from the testimony of Mrs. Minge and of John H. Minge, that at the time of the filing of the original bill in this cause, Mrs. Minge was not refusing and had not declined to take proper steps to execute the trust in said land. When the original bill was filed Mrs. Minge was prosecuting this suit against this defendant; and, if after the institution of that suit she had then refused, her refusal would not confer jurisdiction on the court of chancery in the same suit to entertain an amended bill on behalf of the complainants. An amendment to a bill in chancery, as in a suit at law, takes effect as of the filing of the original bill. Technically an amendment relates back to the time of the filing of the original bill, becomes incorporated in it, and, for all intents and purposes, is the original bill in the case. So, a fact occurring subsequent to the filing of the original bill cannot be set up by way of amendment so as to confer jurisdiction upon the court when before that time the court had no jurisdiction.— *Hill v. Hill*, 10 Ala. 527 ; *P. &. M. Ins. Co. v. Bank*, 63 Ala. 585.

4. The bill in this case was without equity as to some of the complainants in the bill as last amended, and none of them are entitled to recover. All must recover or none can, is the maxim of the court of equity.—*Taylor v. Robinson*, 69 Ala. 272 ; *Dunklin v. Wilson*, 64 Ala. 170 ; *Jones v. Reese*, 65 Ala. 134,

HEAD, J.—George W. H. Minge, who died in 1880, a resident citizen of Marengo county, in this State, left his last will, which was duly established. Its disposition touching the property now in controversy, to-wit, the "Fair Hope" plantation in Perry county, Alabama, "together with all the personal property contained thereon, which is now occupied by my son-in-law, Capt. Joseph Selden," were, that said plantation and personal property were devised and bequeathed to the testator's widow, Mary H. Minge, for life, with vested remainder in fee to the testator's grand-daughters, Mary M. Selden and Maria L. Selden; with the provision, however, that a "reasonable and economical maintenance and support out of the property" be devised and bequeathed to the said Joseph Selden, and that "the said plantation shall be his home during his natural life;" and with the further provision, that, during the lifetime of the widow, the testator's grand-children, G. Minge Selden, John A. Selden and Bettie Selden, should receive, from the proceeds of the property, "their education, maintenance and support;" and the property was expressly charged therewith.

The dispositions appear to be simple and easily understood. The widow was invested with the legal and beneficial estate, in possession, clothed with adequate legal remedies for reduction to, and maintenance of, her actual possession during her life; subject, however, to the trust that she should permit Joseph Selden to make the plantation his home, during his life, and award to him out of the property, real and personal, a reasonable and economical maintenance and support; and to the further trust, that she should award to the three named grand-children, from the proceeds of the property, their education, maintenance and support. In its legal sense, the *possession* of the property did not belong to Joseph Selden. It belonged to Mrs. Minge, the life tenant, whose duty it was to permit him to have his home upon the place. He could not disseize her, without subjecting himself to a possessory action at law, at her suit. The primary source of fulfillment of these trusts for maintenance would, in equity, be the rents, incomes and profits of the property; and these proving inadequate, the corpus, or a part thereof, might, in a judicious manner, be so appropriated. The widow, acting in good faith

and with just and reasonable judgment and discretion in the observance and execution of the beneficial interests secured to herself and in her *cestuis que trusts* by the will, and with just regard to the ultimate rights of the remaindermen, was absolute in her right to the possession, management and control of the property, and the discharge of the trusts impossd upon her.    If she should abuse the trust declared for Joseph Selden, he was clothed with ample remedies for redress, in a court of equity.    So also, was that forum open to the three grand-children, named, for redress of any abuse of the trust declared for them.    The remaindermen were invested with the usual equitable remedies which pertain to estates of that character, for the preservation and protection of their ultimate interests.    The estate of Mrs. Minge, the widow, being legal and in possession, her remedies, in whatever form her rights of possession and enjoyment, growing out of the dispositions of the will, might be invaded, were necessarily legal.    We do not say that conditions may not arise which would entitle her to the aid of a court of equity in the administration of her trusts ; as, for instance, it might be, if she should need the aid of that court in the application of the *corpus* of the property to the purposes of the trusts.

These several rights and remedies of the several classes of persons, referred to, are independent and distinct. The remedies of Joseph Selden do not concern the three grand-children nor the remaindermen.    He and the remaindermen have nothing in common with the grand-children ; nor has he and the latter any interest, in common, with the remaindermen.    In the enforcement of their respective beneficial or ultimate interests, in equity, Mrs. Minge—the trustee and tenant of the particular estate—must needs be the prime adversary party, for it is upon her dereliction alone that a resort to equity, by them, could be justified.    So long as she remains faithful to her duties, exercising, in the administration and protection of the property, the powers with which the law clothes her, there could be no resort by them, to a court of equity.

Mrs. Minge was, by the will, named, and she qualified, as executrix ; but there are no rights of creditors involved in the litigation, and the rights of the parties litigant do not pertain to the executorial office or func-

tions. That character may, therefore, be left out of view.

It was in view of this property, and these interests therein, that the bill in this cause was filed, on the 29th day of July, 1885. The complainants in the original bill, were, first, the widow, Mary H. Minge; then the remaindermen and their husbands, they having intermarried since the death of the testator, and next the three grand-children, for whose education, maintenance and support, the will provided. The other *cestui que trust,* Joseph Selden, was the sole party defendant. With the necessary formal allegations as to the will, the relations of the parties and their interests, exhibiting a copy of the will, the bill averred, that the testator left other large property besides "Fair Hope" and the personal property thereon, which was also devised to the widow for life, and that having plenty to supply her wants she did not insist upon subjecting for her own use and benefit a portion of the income, rents and profits from the Fair Hope place and property thereon, which at the time of testator's death was in the possession of her son-in-law, Joseph Selden, but that she permitted him to collect and retain all of the same, and to remain in possession of the property, and that he is still in possession, appropriating to his own use the rents, &c., and has not accounted to her for any of the annual returns thereof, but has totally neglected to appropriate any of such rents, &c., to the other purposes named in the will; that she, the widow, being the grandmother of the three children, for whose support, &c., the will provided, and their mother having died, and herself, having plenty with which to support them, took the three children to her own home, and did not, for some time, require or demand of her son-in-law, Joseph Selden, any of the annual returns for their education, maintenance and support, but educated, maintained and supported them out of her own income. And the bill avers that the defendant, said Joseph Selden, being in possession and appropriating the rents, &c., to his own use, has set up some claim to the property other than conveyed by the will, and refuses to let the widow as executrix, and as owner of the life estate, share in the management and control of the plantation and the incomes and profits thereof; and is seeking by some pre-

tended claim to defeat the estates of the remaindermen, who are ignorant of said pretended claim to the fee simple, and know of no claim of his to the lands other than that contained in the will; that the rental value of the property is, to-wit, $1,400 *per annum*, and that there is danger of the property being wasted and the rents being appropriated by him. The prayer was for an account from defendant of the rents, incomes and profits received by him since the death of the testator; that he discover and set forth an account of the personal estate had in his possession, since testator's death, and how the same has been disposed of, and what part remains in his possession; and set forth a description of every deed, book, account, letter, paper or writing relating to the matters aforesaid, or to his pretended claim to the plantation; that a receiver be appointed to take charge of the property and rents during the pendency of the suit; that an account be taken of the amount paid out by Mrs. Minge for education, &c., of said three children, and the property be charged therewith; and that their future education, &c., be made a charge on the property; that Mrs. Minge be put into the possession of the property and allowed to manage and control it, and receive the rents, &c., and that every claim of the defendant, other than the interest given him by the will, be annulled, and the title of the remaindermen be sustained, and for general relief. After demurrer filed, the complainants voluntarily amended the bill by striking out Mrs. Minge as a party complainant, and making her a party defendant; and by striking out the prayer that she be put into possession of the property. The demurrers, being reinterposed to the bill as amended, and pointing out, as they did, the manifest misjoinder of parties complainant, the chancellor, properly, sustained the demurrers, for correct reasons stated in his opinion. Indeed, it is apparent that as to each of the three classes of persons originally suing, the bill was wholly without equity. 1. Mrs. Minge's remedies were abundantly adequate at law. 2. The remaindermen alleged no fact, and offered no prayer, making a case for a decree securing the preservation and forthcoming to them of the property, or any part of it, when the life estate should fall in. The pleader expresses the opinion that the personal property is in danger of being wasted by Joseph Selden, but no

act of his is averred showing any disposition of such property, made, attempted or threatened. The bill shows he still has possession of the property left by the testator, on the plantation. Moreover, a decree for such relief would necessarily be against the life tenant herself, whose legal title, in possession, gave her the legal right and power to maintain possession and preserve the property, consistently with her own proper use of it, for ultimate delivery to the remaindermen when her estate therein should determine. In this case Mrs. Minge came in as a joint suitor with the remaindermen, thereby precluding the legal propriety of any allegation of her own misdoing, as well as the possibility of a decree against her in favor of the remaindermen. The voluntary amendment striking her out and making her a defendant, was one of pure form, since it was effected without the change or addition of an allegation of fact, or the insertion of a prayer for relief against her. The bill contained no allegation of maladministration on her part, endangering the ultimate estate of the remaindermen. If she chose to permit the defendant to have the use and possession of the property, and such use was consistent with its proper preservation (and there is no averment that it was not), the remaindermen had no cause to complain. No pretended claim to the property set up by the defendant could defeat or affect the vested estates in remainder, or the remedies of the remaindermen for their recovery, when their right of possession should accrue. The bill did not pretend to be one to perpetuate testimony in reference to such pretended claim. 3. As to the three grand-children, who were *cestuis que trust*, the bill was without the shadow of equity. The property belonged to Mrs. Minge for her life, subject to the right of these grand-children, to have her furnish them education, maintenance and support from its proceeds. They had no other interest in the property. The bill expressly averred that Mrs. Minge, of her own volition, permitted the defendant, who, by the will, was entitled to live upon the plantation and have his support therefrom, to occupy and use the property for his own purposes, and that having abundant other means, she desired the children, who had no mother, to come and live with, and be provided for by her; and the bill expressly showed that they did live with her, and that she furnished

them their education, maintenance and support
down to the time the bill was filed. There
was not a show of grievance against Mrs. Minge,
nor of prayer for relief against her. Indeed there could
not legally be, for Mrs. Minge was a co-complainant
with them, and the voluntary amendment made no
change of allegation. Thereafter the bill was further
amended by striking out the remaindermen and their
husbands and making them, but not their husbands,
parties defendant; also by making Mrs. Minge, indi-
vidually, and as executrix, a party defendant. This
left as complainants, only the three grand-children for
whose education, &c., the will provided. One of these,
John A. Selden, was a minor at the time of this amend-
ment, and he sued by John H. Minge, as his next friend.
This amendment then proceeded to aver in full the facts
relied upon for relief. In form and structure, it is es-
sentially an original bill, introduced, by way of amend-
ment, as a substitute for the original. Being an amend-
ment, it has relation to the time of filing of the original.
The rights of the parties, as they then existed, must be
adjudged. The amendment repeats, in substance, the
formal facts, and interests of the parties in the property.
It shows that the property, properly managed, was suffi-
cient to meet all the charges fixed upon it by the will.
It avers the permissive possession of the defendant, and
that, about the 1st of January, 1885, Mrs. Minge de-
manded possession of him, which he refused; and has
since continued in the possession and enjoyment of the
property, excluding the complainants from the enjoy-
ment of the education, maintenance and support there-
from, secured to them by the will. Improper disposi-
tions and exchanges of personalty and wastes of the
realty by him, during his possession, are averred; and
that he will continue the same unless restrained. It is
averred that Mrs. Minge "has not taken and is not now
taking, and declines to take, any *proper* steps to.execute
the trust as to said land and personal property created
by said will for the benefit of these complainants."
The amendment expresses that no claim is made for
past support, nor future education, but it is averred
that complainants have been compelled, at great ex-
pense, to maintain and support themselves since the
first day of January, 1885. The prayer is for an account

from the defendant of his acts and doings; an account of the original personal property on hand; that disposed of and that received and exchanged by him. That the interests of the complainants and defendant in the trusts be ascertained and fixed, and reimbursement had by complainants from him for their support since January 1st, 1885, and his interest be charged with the same; and that the trust be executed by all proper orders and decrees. A receiver is prayed for to take possession, hold and manage the property, under the direction of the court, during the administration of the trust; and there is a prayer for general relief.

We have seen that Mrs. Minge was the owner of the property and had the exclusive right to its possession, management and control, and clothed with legal remedies to effectuate these rights. As to the education, maintenance and support of the complainants she held in trust. Their equities, in that behalf, were to be worked out and enjoyed, through her, as such trustee. So long as she was faithful to the trust, she could not be lawfully interrupted. Any proceeding against her by *cestuis que trust* must needs aver default or dereliction on her part; and the same is true though the property be actually held by an occupant under her, jointly sued. It is, therefore, obvious that complainants' right to relief, in this cause, turns upon the averments: 1. That Mrs. Minge "has not taken, and is not now taking, and declines to take, any proper steps to execute the trust," &c.; and, 2. That complainants have been compelled to provide for themselves since January 1, 1885. There is no claim of default or dereliction, on her part, prior to January 1st, 1885. Up to that time, by the confession.of the bill, the complainants received from her all that the trust allowed them. Not until then was there any repudiation, by the defendant, Joseph Selden, of her right to the possession and control of the property. It then became her duty to legally assert her rights. As we have intimated, these allegations of default, on the part of Mrs. Minge, speak as of the time the original bill was filed. That was July 29th, 1885. Demurrers were interposed to the amended bill which were overruled by the chancellor, and the cause was submitted for final decree upon pleadings and proofs, including decrees *pro confesso* against all the respondents except Joseph

Selden. The chancellor found that the first alleged ground of equity, viz., that Mrs. Minge "has not taken, and is not now taking, and declines to take any proper steps to execute the trust," was not sustained; upon which finding he based his decree dismissing the bill. It is evident this conclusion was reached in consequence of the fact that there was a failure of proof of that part of the allegation which states that Mrs. Minge "*declines* to take any proper steps to execute the trust," for it is not open, upon the record, to question, that from and after January 1st, 1885, she was actually disseized, and the property held from her adversely, by Joseph Selden, and that she took no steps to assert her rights until she employed counsel to file the original bill in this cause. The decretal order overruling the demurrers to the amended bill established the principle that the filing of the original bill by Mrs. Minge with the other complainants could not be regarded as a performance of the duty which devolved upon her, as trustee, to assert her right of possession, after her disseizin by Joseph Selden, and the chancellor to whom the cause was finally submitted expressed his concurrence in that ruling and his purpose not to modify it. His conclusion, therefore, upon which he dismissed the bill, can be consistently rested upon no other than the proposition above stated, namely, that the effect of the allegation, taken most strongly against the pleader, was that the complainants in the amended bill had requested the trustee, Mrs. Minge, to act, and that she had declined to do so; and in this, we think the chancellor was right. These complainants had no right to institute proceedings in equity to enforce their equitable rights, in a case like this, without first having moved the trustee to act, resulting in failure to procure action by her. She was the legal owner charged with the duty of bringing all necessary suits for the maintenance of her possession and the proper execution of the trust, by and through which the complainants would enjoy their equitable interests; and they, the *cestuis que trust*, would not be permitted to take the matter into their own hands, by a bill of their own, without having made proper effort to obtain the necessary action by the trustee.—*Arnett v. Bailey*, 60 Ala. 435. The allegation that Mrs. Minge *declined* to take proper steps to execute the trust not being sustained

by any proof or confession binding upon Joseph Selden, the decree was properly rested upon the ground stated by the chancellor. But, even with less doubt of its propriety, the decree might have been founded upon the failure of the complainants to establish the second alleged ground of equity set forth in the amended bill, namely, that Mrs. Minge, the trustee, had not furnished the complainants their support, &c., from January 1st, 1885, to the filing of the bill, on July 29th, 1885. The proof is absolutely without conflict, and it is expressly admitted in the brief of appellant's counsel, that Mrs. Minge furnished the complainants, John A. Selden and Bettie Selden, (the latter being the only appellant) with ample support and maintenance, during the entire year 1885 ; and the undisputed proof shows she continued to do so until August, 1886, thus defeating, as to them, the foundation averment upon which their equity rests ; and it need not, at this day, be said that one only, of three complainants, cannot recover ; particularly so, in this court, when one of those not entitled to recover only appeals.

Affirmed.


